# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

ROBIN L. TOWNLEY, )
)
)
Plaintiff, )
)
v. ) Case No. CIV-14-332-RAW-KEW
)
CAROLYN W. COLVIN, Acting )
Commissioner of Social )
Security Administration, )
)
Defendant. )

## REPORT AND RECOMMENDATION

Plaintiff Robin L. Townley (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant - taking into account his age, education, work experience, and RFC - can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

2

substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); see also, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on September 20, 1980 and was 32 years old at the time of the ALJ's decision. Claimant completed her high school education and one year of college. Claimant has worked in the past as a certified nurse's aide at a nursing home, habilitation training specialist, and dietary assistant. Claimant

3

alleged an inability to work beginning May 13, 2008 due to limitations resulting from pain, headaches, neck & back pain, numbness in the hands, and swelling in the feet. Claimant contends she cannot lift anything and has a hard time walking.

**Procedural History**

On October 19, 2010, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. On October 16, 2012, Administrative Law Judge ("ALJ") Bernard Porter conducted an administrative hearing by video with Claimant appearing in Poteau, Oklahoma and the ALJ presiding in McAlester, Oklahoma. On November 9, 2012, the ALJ issued an unfavorable decision. The Appeals Council denied review on June 12, 2014. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she retained the RFC to perform a full range of light

4

work with limitations.

**Error Alleged for Review**

Claimant asserts that the ALJ committed error in (1) reaching an RFC which is not supported by substantial medical evidence; and (2) failing to conduct a proper analysis at step five.

**RFC Determination**

In his decision, the ALJ determined Claimant suffered from the severe impairments of obesity; cervical degenerative disc disease; headaches; major depressive disorder; generalized anxiety disorder; and dependent personality traits. (Tr. 13). The ALJ concluded that Claimant retained the RFC to perform a full range of light work. In so doing, the ALJ found Claimant could lift/carry up to twenty pounds occasionally and ten pounds frequently; stand/walk for six hours in an eight hour workday; sit for six hours total during an eight hour workday. Claimant required a sit/stand option at will. She could occasionally use hand controls. She could never ladders, and scaffolds or crawl. Claimant could not reach overhead bilaterally and could only occasionally reach bilaterally in all other directions. Claimant could never be around temperature extremes. The ALJ found Claimant was limited to routine and repetitive tasks. (Tr. 17).

After consultation with a vocational expert, the ALJ found

Claimant could perform the representative jobs of rental clerk and parking lot attendant. (Tr. 29). As a result, the ALJ found Claimant was not disabled from May 13, 2008 through date of the ALJ's decision. Id.

Claimant first contends the ALJ failed to take into consideration her limitations in social functioning brought about by her severe mental impairments of generalized anxiety disorder, major depressive disorder and dependent personality traits in assessing her RFC. The ALJ concluded Claimant had mild difficulties in social functioning, noting that she has no social activities and no friends. She does not attend any group, club, or church. She testified that she currently has difficulty getting along with others and becomes angry a lot now. (Tr. 16).

On September 29, 2006, Dr. Joseph Tramontrana completed a mental RFC functional assessment form on Claimant. Among his conclusions was a finding that Claimant suffered from a moderate limitation in the ability to interact appropriately with the general public. (Tr. 486). The ALJ gave great weight to the opinion but concluded that "social limitations are simply unsupported" as alleged by Claimant in her testimony. (Tr. 26).

The ALJ's RFC findings are inconsistent with the evidence upon which he relied. "[R]esidual functional capacity consists of those

6

activities that a claimant can still perform on a regular and continuing basis despite his or her physical limitations." White v. Barnhart, 287 F.3d 903, 906 n. 2 (10th Cir. 2001). A residual functional capacity assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts ... and nonmedical evidence." Soc. Sec. R. 96-8p. The ALJ must also discuss the individual's ability to perform sustained work activities in an ordinary work setting on a "regular and continuing basis" and describe the maximum amount of work related activity the individual can perform based on evidence contained in the case record. Id. The ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." Id. However, there is "no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." Chapo v. Astrue, 682 F.3d 1285, 1288 (10th Cir. 2012).

The evidence supported at least a finding of moderate limitations in social functioning - in particular, interaction with the general public. The ALJ reduced the level of her limitation without evidentiary support. The significance of this omission lies in the interplay of the RFC finding with the testimony

elicited from the vocational expert. The expert testifying in this case stated that Claimant could perform the jobs of rental clerk and parking lot attendant - both of which require interaction with the general public as essential functions of the jobs. *Dictionary of Occupational Titles,* #295.357-018, #915.473-010). The vocational expert confirmed that inclusion of an interaction with the general public restriction in the RFC would eliminate all jobs, given Claimant's other limitations. On remand, the ALJ shall reconsider his findings on this limitation in the assessment of the RFC and the effect upon his step five findings.

Similarly, the ALJ stated Claimant had moderate difficulties in regard to concentration, persistence, or pace in his decision but concluded that Claimant's testimony of the extent of this limitation "is not substantiated by formal testing." (Tr. 16). He did not include the limitation in his RFC assessment. (Tr. 17). Claimant is either limited by limitations in concentration, persistence, or pace or she is not - the ALJ has essentially stated it both ways. If the limitation exists, the ALJ shall include it in the RFC on remand. If it does not, he shall explain his findings and his decision to omit it from the RFC.

Claimant also objects to the inclusion of medical records and testing which occurred prior to her onset date. It is not error to

consider these records if the conditions longitudinally existed or began to manifest prior to the onset date. This Court does not find error in the ALJ's consideration of these records unless it is shown that they bear not relation to the conditions which existed at and after the onset date.

Claimant also refers to numerous medical records, testing, and medical opinions which she contends supports greater restrictions than those found by the ALJ in his RFC. In particular, the ALJ should re-examine his assessment of the opinion of Dr. Theresa Horton from May 10, 2011. Dr. Horton found Claimant to have difficulty coping with stress and would struggle to adjust adequately in occupational settings during the relevant time. (Tr. 703). The ALJ included no such restrictions in his RFC findings. On remand, he should re-examine this evidence to evaluate whether further limitations should have been included in Claimant's RFC.

### Step Five Analysis

The vocational expert testified that the job of parking lot attendant consisted of "sit[ting] in the booth and open[ing] the gate or tak[ing] money." (Tr. 63). This testimony appears to be in direct conflict with the specific definition of the position stated in the *DOT*. According to the *DOT*, a parking lot attendant must perform the following tasks:

9

> Parks automobiles for customers in parking lot or storage garage: Places numbered tag on windshield of automobile to be parked and hands customer similar tag to be used later in locating parked automobile. Records time and drives automobile to parking space, or points out parking space for customer's use. Patrols area to prevent thefts from parked automobiles. Collects parking fee from customer, based on charges for time automobile is parked. Takes numbered tag from customer, locates automobile, and surrenders it to customer, or directs customer to parked automobile. May service automobiles with gasoline, oil, and water. When parking automobiles in storage garage, may be designated Storage-Garage Attendant. May direct customers to parking spaces.

*DICOT* 915.473-010 (Parking Lot Attendant).

Before an ALJ may rely upon the testimony of a vocational expert at step five, he "must investigate and elicit a reasonable explanation for any conflict between the Dictionary and expert testimony. . . ." Haddock v. Apfel, 196 F.3d 1084, 1091 (10th Cir. 1999). Defendant appears to argue that once the ALJ asks the vocational expert if his testimony conflicts with the *DOT*, his obligation is concluded. An ALJ's responsibility to investigate any discrepancies between the vocational expert's testimony and the *DOT* remains. Should the ALJ choose to rely upon the vocational expert's testimony without further investigation or inquiry, he does so at his peril. On remand, the ALJ shall investigate and reconcile the apparent discrepancy in the expert's testimony.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **REVERSED and the matter REMANDED** for further proceedings consistent with this Order. The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 10th day of March, 2016.

KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE